**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **MEDICAID and MEDICARE ADVANTAGE PRODUCTS ASSOCIATION OF PUERTO RICO, INC.,** *et al.,* | |
| | **CIVIL NO. 20-1760 (DRD)** |
| *Plaintiffs,* | |
| v. | |
| **DOMINGO EMANUELLI HERNÁNDEZ, in his official capacity as Secretary of Justice of Puerto Rico,** *et al.,* | |
| *Defendants.* | |

**OPINION AND ORDER**

Pending before the Court is a *Motion to Dismiss* (Docket No. 16) filed by Defendants Domingo Emanuelli-Hernández and Mariano A. Mier Romeu, in their official capacities as the Commonwealth of Puerto Rico's Attorney General and Insurance Commissioner, respectively. A *Response in Opposition*, *Reply* and *Surreply* ensued shortly thereafter. See Docket Nos. 20, 24 and 37. Whereas, Plaintiffs, Medicaid and Medicare Advantage Products Association of Puerto Rico, Inc. (hereinafter, "MMAPA"), MMM Healthcare, LLC (hereinafter, "MMM"), Triple-S Advantage, Inc., Triple-S Salud, Inc., Triple S-Vida, Inc. (hereinafter, collectively "Triple-S"), MCS Advantage, Inc. (hereinafter, "MCS"), First Medical Health Plan, Inc. (hereinafter, "First Medical"), Humana Insurance of Puerto Rico and Humana Health Plans of Puerto Rico, Inc., (hereinafter, collectively "Humana") filed a *Cross-Motion for Summary Judgment*. See Docket No. 20.

Upon review, and for the reasons stated herein, the Court hereby **DENIES** the Defendants' *Motion to Dismiss* (Docket No. 16) and **DENIES** Plaintiffs' *Cross-Motion for Summary Judgment* (Docket No. 20) at this stage of the proceedings.

## INTRODUCTION

The instant action stems from the Commonwealth of Puerto Rico's approval of Act 138-2020 (2020 P.R. Laws 138) and Act 142-2020 (2020 P.R. Laws 142), which set new standards for the operation of health plans throughout the Commonwealth, including those operated under the Medicare Advantage program, Medicare Part D, the Federal Employee Retirement Income Security Act of 1974 (hereinafter, "ERISA"), and the Federal Employees Health Benefits program (hereinafter, "FEHB"). Specifically, Act 138-2020 imposes obligations on insurers related to the timing of medical claims submissions and the payment of claims. In turn, Act 142-2020 prohibits providers' medical criteria regarding patients' treatments for being altered by insurers or health management organizations; while also requiring insurers or health management organizations to provide coverage of prescription drugs during the medical exception request process and sets the standard for payments to pharmacies for the initial drugs dispensed during this process. See Comp., at ¶ 3. Act 138 went into effect on November 30, 2020, and Act 142 went into effect on December 8, 2020. Id.

Plaintiffs claim that "[e]ach of these federal programs contains an express preemption clause like the one considered in *[Medicaid & Medicare Advantage Prods. Ass'n of P.R., Inc. v. Emanuelli-Hernández*, No. CV 19-1940 (SCC), 2021 WL 792742 at *10 (D.P.R. Mar. 1, 2021)]*, prohibiting the Commonwealth from dictating the rules under which these plans operate."

Docket No. 20 at p. 7. Accordingly, Plaintiffs seek declaratory and injunctive relief against the enforcement of both Acts. Id.

Defendants have moved to dismiss the instant action, asserting that "[t]he federal legislation cited by plaintiffs in their complaint does not preempt Act 138/2020 and Act 142/2020" as "the Puerto Rico Legislature is exercising its historic and traditional police power to ensure the health and safety of the citizens and residents of Puerto Rico." Docket No. 16 at p. 18, ¶ 49. Hence, according to Defendants, "the presumption against preemption to these laws" is applicable. Id.

However, Plaintiffs argue that "the presumption against preemption does not apply in the face of an express preemption clause—a condition satisfied here four times over." Docket No. 20 at p. 7. Therefore, as Plaintiffs claim that this is a purely legal question which should be resolved in their favor, they filed a cross-motion for summary judgment on their claims. See id. at 8.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Commonwealth of Puerto Rico approved Act 138-2020 and Act 142-2020. Particularly, Act 138-2020 amended Sections 30.020, 30.030, 30.040 and 30.050 of Act No. 77 of the Puerto Rico Insurance Code and Section 6 of Act-5 2014. Comp. at ¶ 29.

Act 138 dictates numerous aspects of claims payment between plans and providers. For instance, it incorporates into Act No. 77 a requirement that insurance companies pay healthcare providers within thirty (30) days of receiving a claim for services rendered, as long as the claim constitutes a clean claim (i.e., clean invoice). Id. at ¶ 30; see 2020 P.R. Law 138, ¶ 2. Act 138 specifically defines a clean claim as one that "has no defect, impropriety or special circumstance, such as the lack of necessary documentation that delays timely payment" while imposing new

obligations related to the timing of claims submissions and payments of claims by insurers. Comp. at ¶¶ 31-32; see 2020 P.R. Law 138, § 1(i). In furtherance thereof, the Office of the Insurance Commissioner is directed "to prescribe, by regulations, the minimum content criteria for each type of claim, in order to properly establish the minimum content criteria for each type of clean claim, according to the service rendered." Id. If a claim satisfies the minimum criteria, the health insurer is required to treat the claim as clean while prohibiting insurers from requiring additional documentation from providers unless the insurer has already specified such a requirement by contract. Id.

The Act further specifies the timeframe for the submission and payment of clean claims, by requiring providers to submit their claims for payment of services rendered within ninety (90) days of service, and that insurers and health service organizations pay clean claims within 30 days of receipt. Id. at § 2; see Comp. at ¶ 33. New requirements on the communications between insurers and providers regarding non-claim claims are also imposed by the Act. For instance, within 15 days of receiving a claim, insurers must notify providers if they determine that the claim cannot be processed. 2020 P.R. Law 138, § 4. The notification must include the outstanding information or documentation needed to process the claim. Id. Should a provider fail to notify within the applicable timeframe, the claim will be considered clean. Id. Once a provider received notification of a claim's deficiency, they have 10 days to respond. Id. Upon receiving the provider's response, insurers have five (5) days to either object to or pay the claim. Id. An insurer's failure to object within the applicable five (5) days, shall result in the claim being considered actionable for payment. Id.; see Comp. at ¶ 34.

Finally, Act 138 orders the Puerto Rico Health Insurance Administration to regulate utilization review processes according to new principles, such as, mandating the utilization review be completed within 48 hours of service; prohibiting the use of retrospective review remedies; and providing that the clinical review criteria established in the Insurance Code shall be used as a reference only, with providers' professional judgments ultimately determining the medical necessity of a service. 2020 P.R. Law 138, § 5; see Comp. at ¶ 35.

In turn, Act 142-2020 amended Sections 2.030, 2.040 and 30.050 of Chapter 2 and Section 4.070 of Chapter 4 of Act 194-2011 of the Puerto Rico Insurance Code. Comp. at ¶ 29. Act 142 essentially regulates the handling of prescription drugs while setting standards for coverage of prescription drugs, as well as standards that health insurers must follow when a patient's claim for drug prescription coverage is denied. Comp. at ¶ 38. Namely, it incorporates a revision of the term "Clinical Review Criteria" for stating that physicians are not obligated to use these guidelines when deciding a patient's treatment plan and, as long as providers conform with generally accepted standards of medical practice, their professional judgment remains the exclusive criteria for determining necessary treatment. Id. at ¶ 39. Health Insurers, Pharmacy Benefit Managers (hereinafter, "PBMs") and other entities that administer pharmacy services are required to provide temporary coverage of prescription drugs during the medical exception process. 2020 P.R. Law 142, § 2(B); Comp. at ¶ 40. The medical exception process is triggered when an enrollee or their prescriber requests coverage of a prescription drug that is not included on the health plan's formulary or seeks access to a non-preferred drug at the same cost sharing level as a preferred drug. Comp. at ¶ 41. While the exception is being considered, the Act mandates coverage of the drug even if the drug is excluded from the plan's formulary. The

coverage determination must be made within 48 hours from the date of the receipt of the request, or the date of the receipt of certification, if required by the health insurance organization or insurer, whichever is later. For controlled drugs, the timeframe shall not exceed 24 hours. 2020 P.R. Law 142, § 3(E)(1); see Comp. at ¶ 42. Furthermore, the Act mandates that the insurer, PBM or other applicable entity providing the services pay the pharmacy for the initial dispensed drug while accepting electronic invoicing in lieu of paper. 2020 P.R. Law 142, § 2(B).

Medicare Advantage and Part D plans are highly regulated by the federal government. The Medicare statute and regulations establish a comprehensive and articulated framework governing the benefits that may be covered by Medicare Advantage and Part D plans, how beneficiaries may access such benefits, and other rights and responsibilities related to delivery and payment for healthcare items and services. Comp. at ¶ 45. In the *Complaint*, Plaintiffs argue that federal statutes and regulations directly address the topics covered by Laws 138 and 142. Specifically, Plaintiffs argue that the Medicare laws and regulations directly address the timing and process for payment of claims submitted by providers. For instance, clean claims are defined, prompt payment for non-contracted providers are specified, and provision that provider contracts must include a prompt payment provision that is agreed between the plan and the provider, among others. Comp. at ¶ 47.

The federal statutes and regulations governing Medicare Advantage and Part D also address the medication that may be covered under Medicare Parts B and D and those that cannot be covered, procedures for plans to establish formularies and concurrent drug utilization review systems, and the mandatory processes for plans to process and respond to requests for exceptions to formulary and coverage requirements. Comp. at ¶ 48.

Plaintiffs further claim that 42 C.F.R. Part 422, Subpart M and 42 C.F.R. Part 423, Subpart M and the CMS Parts C & D Grievances, Organization/Coverage Determinations, and Appeals Guidance set forth the standards for Medicare Advantage and Part D plans to follow in making coverage decisions and evaluating beneficiary and provider appeals. Comp. at ¶ 52. Particularly, when Part D sponsors deny coverage of a medication at a point of sale, the Part D plan, "has made a coverage determination that is subject to all applicable coverage determination standards, timelines and requirements . . . and [if] the issue is not resolved at the POS [Point of Sale], the network pharmacy must deliver written notice to the enrollee explaining their right to request a coverage determination, including an exception, from the plan." Prescription Drug Benefit Manual, Ch. 6, Section 30.2.2; 42 C.F.R. 423.566; see Comp. at ¶ 53.

ERISA-covered health plans are sponsored by employers and employee organizations and provide health benefits to employees. Comp. at ¶ 54. Plaintiffs allege that ERISA "seeks to make the benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures. Those systems and procedures are intended to be uniform" consistent with "Congress's intent to establish the regulation of employee welfare benefit plans as exclusively a federal concern." Gobeille v. Liberty Mut. Ins. Co., 136 S. Ct. 936, 943-44 (2016) (citations and internal quotation marks omitted). Id. at ¶ 55. As part of its provisions, each ERISA plan sponsor is free to structure its own plan and choose the benefits that will be provided to its employees subject to the minimum requirements set forth by law. Id. at ¶ 56. For instance, the ERISA statutes and regulations address the timing and process for payment of claims and for resolving dispute regarding claims. ERISA regulations also include provisions related to how the plan must decide medical necessity. Id. at ¶ 61. It is also required by the federal ERISA statute

that every plan provides summary plan descriptions that advise beneficiaries exactly what processes and benefits apply to the plan. Id. at ¶ 63. Therefore, although every plan is responsible for setting the procedures of coverages that apply to its plan, such plan must satisfy the minimum requirements mandated by federal law. Id. at ¶ 66. According to Plaintiffs, ERISA dictates choices about submission and timing of claims and the drugs that are covered and on what terms are to be made by the ERISA plan sponsors in accord with the minimum standards set forth by law. Comp. at 71.

Likewise, the FEHB Program was established and regulated by the federal government and provides employer-sponsored group health insurance to federal employees, retirees, former employees as well as their family members. Comp. at ¶ 72. The FEHB creates a framework for the administration of health benefits by establishing the member eligibility requirements, the health services to be covered, and establishing standards that insurance plans must comply with in order to offer policies under the Program. Id. The applicable statute authorizes the Office of Personnel Management (hereinafter, "OPM") to enter into contracts with carriers to provide the federal government's chosen benefits to federal employees on the federal government's terms. Section § 8902(d) requires that a contract between OPM and a carrier "shall contain a detailed statement of benefits offered and shall include such maximums, limitations, exclusions, and other definitions of benefits as [OPM] considers necessary or desirable." 5 U.S.C. § 8902(d); see Comp. at ¶ 74. By statute, OPM is also entitled to "prescribe reasonable minimum standards for health benefits plans described by section 8903 or 8903a of this title and for carriers offering the plans." 5 U.S.C. § 8902(e).

Additionally, the FEHB disposes the timing and process for payment of claims and for resolving disputes regarding claims. See 8 C.F.R. 890.105; Comp. at ¶ 77. According to Plaintiffs, OPM imposes additional requirements on insurers for the processing, payment and timing of claims during the contracting process. Comp. at ¶ 78. The FEHB Program further imposes standards as to which drugs are covered. Id. at ¶ 79. As to utilization management, Plaintiffs argue that the statute requires that contracts with plans include a requirement to implement hospitalization cost-containment measures, such as measures to verify medical necessity, determine the appropriateness of providing services on an outpatient basis, and case management, among others. Id. at ¶ 80; see 5 U.S.C. § 8902(n). As to prescription-drug benefits, the FEHB program specifies utilization management standards. Comp. at ¶ 81. Therefore, choices about submission and timing of claims and the drugs that are covered and on what terms are to be made by OPM through contract in accord with the minimum standards set by federal law. Id. at ¶ 82.

Plaintiffs are seeking the following remedies: (1) declare that Act 138-2020 is expressly preempted by Medicare Part C; (2) declare that Act 142-2020 is expressly preempted by Medicare Part C; (3) declare that Act 138-2020 is expressly preempted by Medicare Part D; (4) declare that Act 142-2020 is expressly preempted by Medicare Part D; (5) declare that Act 138-2020 is expressly preempted by ERISA; (6) declare that Act 142-2020 is expressly preempted by ERISA; (7) declare that Act 138-2020 is expressly preempted by FEHB; (8) declare that Act 142-2020 is expressly preempted by FEHB; (9) permanently enjoin Defendants and their agents, servants, employees, and all persons in active concert or participation with them from taking any action

under or to enforce Act 138-2020 or Act 142-2020, and; (10) grant Plaintiffs such additional or different relief as it deems just and proper. Comp. at pp. 21-22.

The Defendants, however, move for dismissal. Essentially, Defendants argue that "there is no subject matter jurisdiction and no partial or complete federal preemption of the two (2) local territorial laws object of the lawsuit[, hence,] there is no judicial remedy to be granted." Motion to Dismiss (hereinafter, "MTD"), Docket No. 16 at p. 3, ¶ 6.

## II.  LEGAL STANDARD

### A.  *Federal Rule of Civil Procedure 12(b)(1)*

"When a court is confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter." (citations omitted). Deniz v. Municipality of Guaynabo, 285 F.3d 142, 149 (1st Cir.2002). "After all, if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest." 285 F.3d at 150.

Rule 12(b)(1) provides that a complaint will be dismissed if the court lacks subject matter jurisdiction. It is settled that the standard followed by the court when considering a dismissal request under Rule 12(b)(1), is that the court "must accept as true all well-pleaded factual claims and indulge all reasonable inferences in plaintiff's favor." Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir.1998), as restated in Rolón v. Rafael Rosario & Associates, Inc., et al., 450 F.Supp.2d 153, 156 (D.P.R.2006). Moreover, [m]otions brought under Rule 12(b)(1) are subject to the same standard of review as Rule 12(b)(6)." De Leon v. Vornado Montehiedra Acquisition L.P., 166 F. Supp. 3d 171, 173 (D.P.R. 2016); see Negrón-Gaztambide v. Hernández Torres, 35 F.3d 25, 27 (1st Cir. 1994). As such, "[d]etermining whether a complaint states a plausible claim for relief will . . .

be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

To determine jurisdiction under Rule 12(b)(1), the court may also review the evidence on record, including affidavits and depositions, as opposed to a dismissal request under any other subsection of Rule 12(b). Once the jurisdiction of the court is challenged by the defendant through a motion to dismiss, "it is plaintiff's burden to establish that the court has jurisdiction." Rolón, supra.

More importantly, "Federal Courts are courts of limited jurisdiction," <u>Rolón</u>, 450 F.Supp.2d at 156, thus, "this Court has the responsibility to police the border of federal jurisdiction" <u>Spielman v. Genzyme Corp.</u>, 251 F.3d 1 (1st Cir.2001), and "must rigorously enforce the jurisdictional limits [standards] that Congress chooses, <u>Del Rosario Ortega v. Star Kist Foods</u>, 213 F.Supp.2d 84, 88 (D.P.R.2002)(*citing* <u>Coventry Sewage Associates v. Dworkin Realty Co.</u>, 71 F.3d 1, 3 (1st Cir.1995), as restated in <u>Rolón</u>, 450 F.Supp.2d at 156. <u>See also</u> <u>Kokkonen v. Guardian Life Ins. Co. of America</u>, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, <u>see</u> <u>Willy v. Coastal Corp.</u>, 503 U.S. 131, 136–137, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992) [and the collection of cases cited therein] );" <u>Rossello–Gonzalez v. Calderon–Serra</u>, 398 F.3d 1, 15 (1st Cir.2004)("Federal courts are courts of limited jurisdiction, and therefore must be certain that they have explicit authority to decide a case. <u>Bonas v. Town of North Smithfield</u>, 265 F.3d 69, 75 (1st Cir.2001) (*citing* <u>Irving v. United States</u>, 162 F.3d 154, 160 (1st Cir.1998) (en banc)). Thus, we subject the plaintiff's choice of a federal forum to careful scrutiny. Id.)"

A challenge under Rule 12(b)(1) constitutes a challenge to federal subject matter jurisdiction, which includes ripeness, mootness, sovereign immunity, and subject matter jurisdiction. See Valentín v. Hospital Bella Vista, 254 F.3d 358, 362–63 (1st Cir.2001). Where subject matter jurisdiction is challenged under 12(b)(1), the party asserting jurisdiction bears the burden of demonstrating the existence of federal subject matter jurisdiction. See Skwira v. United States, 344 F.3d 64, 71 (1st Cir.2003). See also Murphy v. United States, 45 F.3d 520, 522 (1st Cir.1995); McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir.2004). In Valentin, 254 F.3d at 362–63, the Court held that Fed.R.Civ.P. 12(b)(1) is a "large umbrella, overspreading a variety of different types of challenges to subject matter jurisdiction," including ripeness, mootness, the existence of a federal question, diversity, and sovereign immunity.

The Defendants argue that the Court lacks subject matter jurisdiction over this matter. As previously mentioned, "federal courts are courts of limited jurisdiction possessing 'only that power authorized by Constitution and statute.'" Medicaid & Medicare Advantage Prod. Ass'n of Puerto Rico, Inc. v. Emanuelli-Hernandez, No. CV 19-1940 (SCC) (D.P.R. Mar. 1, 2021) (citing Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994)). According to Defendants, "plaintiffs have failed to articulate an actionable claim and there is no total or partial preemption of either impugned law." MTD at ¶ 17. Accordingly, Plaintiffs fail to meet the burden of establishing the basis for federal question jurisdiction for their preemption claims as there is "no partial or complete federal preemption of the two (2) local territorial laws object of the lawsuit[, hence] there is no judicial remedy to be granted." MTD at p. 3, ¶ 6.

The Court is not persuaded by the Defendants contention and briefly explains. Plaintiffs' *Complaint* is based upon the following controversy:

> [t]his case is about <u>federal preemption of two Puerto Rico laws</u> affecting various aspects of the claims payment process between health plans and providers, as well as the health plan processes to review the necessity of services and drugs. These two laws reach broadly, including to health insurance offered pursuant to contracts with the federal government under the Medicare and the Federal Employees Health Benefit Programs, as well as private sector plans governed by the Employee Retirement Income Security Act of 1974 (ERISA).

<u>Comp.</u> at p. 2, ¶ 1 (emphasis ours). Such claims are based upon the following federal laws, namely, Medicare Part C, 42 U.S.C. § 1395w-21 *et seq.*, Medicare Part D, 42 U.S.C. § 1395w-101 *et seq.*, the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, and the Federal Employees Health Benefits Program, 5 U.S.C. § 8901 *et seq.* The Court must stress that "[a] plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." <u>Shaw v. Delta Air Lines, Inc.</u>, 463 U.S. 85, 96, 103 S. Ct. 2890, 2899, n.14, 77 L. Ed. 2d 490 (1983).

Against this backdrop, there is "no doubt that federal courts have jurisdiction under [28 U.S.C.] § 1331" over an action seeking injunctive and declaratory relief against state officials on the grounds that a state regulation was preempted by federal law. <u>Verizon Maryland, Inc. v. Public Service Commission</u>, 535 U.S. 635, 642, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002); <u>see also</u>, <u>Shaw</u>, 463 U.S. at 96 n.14, 103 S.Ct. 2890; <u>Local Union No.12004, United Steelworkers of America v. Massachusetts</u>, 377 F.3d 64, 74 (1st Cir.2004) ("A plaintiff may assert federal preemption as an affirmative cause of action to enjoin state officials from interfering with federal rights.").

Here, Plaintiffs precisely seek relief from state regulation based on preemption by federal statute. As the subject matter jurisdictional requirement has been met by Plaintiffs, the Court needs not go further.

**B.**   ***Federal Rule of Civil Procedure 12(b)(6)***

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Under Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions."  See Ocasio–Hernandez v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir.2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).' ") (*quoting* Twombly, 550 U.S. at 555) (citation omitted).  Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a).  Id. at 570; See e.g. Ashcroft v. Iqbal, 556 U.S. 662 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by Twombly, 550 U.S. 544, and Iqbal, 556 U.S. 662.  "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action.  See Iqbal, 556 U.S. at 677–679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a

<u>Bivens</u> claim, leaving the complaint with only conclusory statements).  First, the Court must "accept as true all of the allegations contained in a complaint [,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. <u>Iqbal</u>, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 268 (1st Cir.2009) (quoting <u>Iqbal</u>, 556 U.S. at 678) (quoting <u>Twombly</u>, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." <u>Iqbal</u>, 556 U.S. at 679.  This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. <u>Id</u>.

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." <u>Sánchez v. Pereira–Castillo</u>, 590 F.3d 31, 41 (1st Cir.2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]' 'that the pleader is entitled to relief.'" <u>Iqbal</u>, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." <u>Id.</u> at 682 (<i>citing</i> <u>Twombly</u>, 550 U.S. at 567).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." <u>Sepúlveda–Villarini v. Dep't of Educ.</u>

of P.R., 628 F.3d 25, 30 (1st Cir.2010) (*citing* Twombly, 550 U.S. at 556); Ocasio–Hernández, 640 F.3d at 12 (citing *Iqbal*, 556 U.S. at 679); See Twombly, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.") (internal quotation marks omitted); See Ocasio–Hernández, 640 F.3d at 12 (*citing* Twombly, 550 U.S. at 556, 127 S.Ct. 1955) ("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." Sepúlveda–Villarini, 628 F.3d at 29.

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. Penalbert–Rosa v. Fortuño–Burset, 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." Id. at 596; See Iqbal, 556 U.S. at 681 ("To be clear, we do not reject [ ] bald allegations on the ground that they are unrealistic or nonsensical.... It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); See Mendez Internet Mgmt. Servs. v. Banco Santander de P.R., 621 F.3d 10, 14 (1st Cir.2010) (the Twombly and Iqbal standards require District Courts to "screen[ ] out rhetoric masquerading as litigation."). However, merely parroting the elements of a cause of action is insufficient. Ocasio–Hernández, 640 F.3d at 12 (citing Sánchez v. Pereira–Castillo, 590 F.3d 31, 49 (1st Cir.2009)).

### III.      LEGAL ANALYSIS

**A.      *Express Preemption***

Under the Supremacy Clause of Article VI of the Constitution, "[w]hen Congress has expressly so provided, federal preemption of state law is mandated." Rosario–Cordero v. Crowley Towing & Transp. Co., 46 F.3d 120, 122 (1st Cir.1995). As such, "[a]ny state law that contravenes a federal law is null and void." Tobin v. Fed. Exp. Corp., 775 F.3d 448, 452 (1st Cir. 2014). "Federal preemption of state law may occur either expressly or by implication." Brown v. United Airlines, Inc., 720 F.3d 60, 63 (1st Cir. 2013).

Therefore, "[t]he issue of preemption "requires an examination of congressional intent." Schneidewind v. ANR Pipeline Co., 485 U.S.293, 299, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988). "Congress explicitly may define the extent to which its enactments pre-empt state law." Id. (*citing* Shaw, 463 U.S. at 95–96, 103 S.Ct. 2890). Express preemption exists "when a federal statute explicitly confirms Congress's intention to preempt state law and defines the extent of that preclusion." Grant's Dairy–Maine v. Commissioner of Maine, 232 F.3d 8, 15 (1st Cir.2000). "Congressional intent is the touchstone of any effort to map the boundaries of an express preemption provision." Tobin, 775 F.3d at 452. Accordingly, "when Congress has made its intent known through explicit statutory language, the courts' task is an easy one." English v. General Electric Co., 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). Notably, when the statute "'contains an express pre-emption clause,' [the Court does] not invoke any presumption against pre-emption but instead 'focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.'" Puerto Rico v. Franklin California Tax-Free Tr., 579 U.S. 115, 125, 136 S. Ct. 1938, 1946, 195 L. Ed. 2d 298 (2016) (*quoting* Chamber of

Commerce of United States of America v. Whiting, 563 U.S. 582, 594, 131 S.Ct. 1968, 179 L.Ed.2d 1031 (2011)). Therefore, if a statute contains a specific preemption clause, the Court's inquiry is simplified.

Now we must determine whether Plaintiffs complied with raising plausible claims for relief as to whether Act 138-2020 and Act 142-2020 are preempted by Medicare, ERISA and/or FEHB. In order to illuminate this intent, the Court begins with the text and context of each federal provision individually.

### 1) Medicare

Medicare is a federal health insurance program established under Title XVIII of the Social Security Act for people who are 65 years and older and some younger people with certain disabilities or end-stage renal disease. It is administered by the Secretary of Health and Human Services through the Centers for Medicare and Medicaid Service (hereinafter, "CMS"), and consists of four (4) parts. See Medicare Program; Establishment of the Medicare Advantage Program, 70 Fed. Reg. 4588 (Jan. 28, 2005).

"A Medicare Administrative Contractor (MAC) is a private health care insurer that has been awarded a geographic jurisdiction to process Medicare Part A and Part B medical claims or Durable Medical Equipment (DME) claims for Medicare Fee-For Service (FFS) beneficiaries." CMS. *What is a MAC*, https://www.cms.gov/Medicare/Medicare-Contracting/Medicare-Administrati ve-Contractors/What-is-a-MAC#WhatIsAMac (visited March 14, 2022). "Under the traditional Medicare program, the government pays healthcare providers directly based on a fee-for-services schedule devised by CMS." Medicaid & Medicare Advantage Prod. Ass'n of Puerto Rico, Inc. v. Emanuelli-Hernandez, 2021 WL 792742 at *2 (D.P.R. Mar. 1, 2021).

However, under Medicare Part C (also known as "Medicare Advantage"), CMS contracts with the private Medicare Advantage organizations, who in turn contract with healthcare providers, to provide bundled Medicare plans to MA beneficiaries." Id. (internal quotations omitted). Therefore, Medicare Advantage ("hereinafter, "MA") expanded Medicare's beneficiaries' insurance choices to private plans "with coordinated care and more comprehensive benefits" than those traditionally provided under Medicare. See id. Likewise, private companies offer Medicare Part D, which provides an optional prescription drug coverage for beneficiaries who select it, under contract with CMS. See Docket No. 20 at p. 8. Medicare Advantage organizations receive a per-person monthly payment to provide coverage under Part C and Part D plans. See Medicaid & Medicare Advantage Prod. Ass'n of Puerto Rico, Inc., 2021 WL 792742 at *2. But "[t]he government also contributes toward some individual Part D claims through a low-income cost-sharing subsidy, catastrophic reinsurance, and risk corridors." Docket No. 20 at p. 8.

As previously explained, "[c]ongressional intent is the touchstone of any effort to map the boundaries of an express preemption provision." Tobin, 775 F.3d at 452. Therefore, we turn to the state and federal law at issue, starting with the plain language of the Preemption Provision of the Medicare Advantage Act. Firstly, the standards established under Medicare Part C "shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part." 42 U.S.C. § 1395w-26(b)(3). This section is equally applicable to Medicare Part D. See 42 U.S.C. § 1395w-112(g). Hence, "[t]he legislative history of this provision clarified that 'the [Medicare Advantage Program] is a federal program operated under Federal rules and that State laws, do

not, and should not apply, with the exception of state licensing laws or state laws related to plan solvency.'" First Med. Health Plan, Inc. v. Vega-Ramos, 479 F.3d 46, 51 (1st Cir. 2007) (*quoting* H. Conf. Rep. 108–391 at 557, *reprinted in* 2003 U.S.C.C.A.N. at 1926). Although the First Circuit has not issued a definitive resolution as to the analytical test applicable to Medicare preemption, the Court sides with fellow judge Hon. Silvia Carreño Coll's explanation that "[t]he Preemption Provision clearly states in the broadest of terms that Medicare Part C supersedes all regulation by the States of MA plans offered by MAOs, with only two explicitly delineated exceptions" for licensing and plan solvency. Medicaid & Medicare Advantage Prod. Ass'n of Puerto Rico, Inc., 2021 WL 792742 at *2.

### 2) *Employment Retirement Income Security Act of 1974 ("ERISA")*

The Employment Retirement Income Security Act of 1974 ("ERISA") is a "federal law that sets minimum standards for most voluntarily established retirement and health plans in private industry to provide protection for individuals in these plans." *Employee Retirement Income Security Act (ERISA)*, U.S. DEP'T OF LAB., https://www.dol.gov/general/topic/health-plans/erisa (last visited March 14, 2021). ERISA "does not go about protecting plan participants and their beneficiaries by requiring employers to provide any given set of minimum benefits, but instead controls the administration of benefit plans … ." New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 651, 115 S. Ct. 1671, 1674, 131 L. Ed. 2d 695 (1995). Accordingly, ERISA's "systems and procedures are intended to be uniform." Gobeille v. Liberty Mut. Ins. Co., 577 U.S. 312, 321, 136 S. Ct. 936, 944, 194 L. Ed. 2d 20 (2016). In fact, "[r]equiring ERISA administrators to master the relevant laws of 50 States and to contend with litigation

would undermine the congressional goal of 'minimiz[ing] the administrative and financial burden[s]' on plan administrators—burdens ultimately borne by the beneficiaries." Id.

ERISA also includes an express preemption provision, which provides in its pertinent part that "the provisions of this subchapter … shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Evidently, "[o]ne of the principal goals of ERISA is to enable employers 'to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits,' Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 148, 121 S. Ct. 1322, 1328, 149 L. Ed. 2d 264 (2001) (quoting Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 9, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)). Therefore, "[u]niformity is impossible … if plans are subject to different legal obligations in different States." Id. Lastly, pursuant to Supreme Court precedent, ERISA's express preemption provision demonstrates "Congress's intent to establish the regulation of employee welfare benefit plans 'as exclusively a federal concern.'" Travelers, 514 U.S. at 656, 115 S.Ct. at 1671 (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 505, 101 S. Ct. 1895, 1897, 68 L. Ed. 2d 402 (1981)).

Implementing these provisions there are two categories of state laws preempted by ERISA. Firstly, "ERISA pre-empts a state law if it has 'reference to' ERISA plans." Gobeille, 577 U.S. at 320, 136 S. Ct. at 944. Specifically, "[w]here a State's law acts immediately and exclusively upon ERISA plans, … or where the existence of ERISA plans is essential to the law's operation, … that 'reference' will result in pre-emption." California Div. of Lab. Standards Enf't v. Dillingham Const., N.A., Inc., 519 U.S. 316, 325, 117 S. Ct. 832, 838, 136 L. Ed. 2d 791 (1997). Secondly, "[a] state law also might have an impermissible connection with ERISA plans if 'acute, albeit indirect,

economic effects' of the state law 'force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers.'" Gobeille, 577 U.S. at 320, 136 S. Ct. at 943. Ultimately, preemption of "[d]iffering, or even parallel regulations from multiple jurisdictions," are necessary in order to "prevent the States from imposing novel, inconsistent, and burdensome" legislation. Id. at 323, 136 S. Ct. at 945.

### 3) Federal Employees Health Benefits ("FEHB")

The Federal Employees Health Benefits Program ("FEHB") was established and regulated by the federal government and provides employer-sponsored group health insurance to federal employees, retirees, former employees as well as their family members. Comp. at ¶ 72. The FEHB provides the legal framework for the administration of health benefits by establishing the member eligibility requirements, the health services to be covered, and establishing standards that insurance plans must comply with in order to offer policies under the Program. Id. The applicable statute authorizes the OPM to enter into contracts with carriers to provide the federal government's chosen benefits to federal employees on the federal government's terms. See 5 U.S.C. § 8902(d), (e). The federal government contributes a portion of the premium necessary to provide coverage to its employees. Id. at § 8906.

The FEHB program also includes an express preemption provision, which reads as follows:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.

5 U.S.C. § 8902(m)(1). The Supreme Court has "'repeatedly recognized'" that the phrase 'relate to' in a preemption clause 'express[es] a broad pre-emptive purpose.' Congress characteristically employs the phrase to reach any subject that has 'a connection with, or reference to,' the topics

the statute enumerates." <u>Coventry Health Care of Missouri, Inc. v. Nevils</u>, 137 S. Ct. 1190, 1197, 197 L. Ed. 2d 572 (2017) (internal quotations omitted).

Notably, the "FEHBA concerns 'benefits from a federal health insurance plan for federal employees that arise from a federal law." <u>Coventry</u>, 137 S. Ct. at 1193, 197 (*quoting* <u>Bell v. Blue Cross & Blue Shield of Oklahoma</u>, 823 F.3d 1198, 1201–02 (8th Cir. 2016)) (internal quotations omitted). Therefore, "strong and 'distinctly federal interests are involved.'" <u>Coventry</u>, 137 S. Ct. at 1193 (*quoting* <u>Bell</u>, 823 F.3d at 1202). The Eight Circuit has emphasized that, "[a]lthough health care in general is an area of traditional state regulation, this dispute concerns benefits from a federal health insurance plan for federal employees that arise from a federal law. There is obviously a long history of federal involvement in federal employment and benefits." <u>Bell</u>, 823 F.3d at 1202 (internal citations omitted).

**B.    *Dismissal under 12(b)(6)***

Essentially, the standard of review in order to grant or deny a motion to dismiss under 12(b)(6) must focus primarily on whether Plaintiffs' allegations and information provided in the *Complaint* are sufficient to establish valid claims. Notably, "[t]he sole inquiry under Rule 12(b)(6) is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." Fed.R.Civ.P. 12(b)(6). <u>Ocasio-Hernandez</u>, 640 F.3d at 7.

Upon analyzing the *Complaint* in light most favorable to Plaintiffs, the Court finds that Plaintiffs' allegations provide sufficient facts to raise a plausible claim for relief. Simply put, Plaintiffs effectively allege that federal law preempts Act 138-2020 and Act 142-2020 as applied to Medicare Part C, Medicare Part D, ERISA and FEHB plans. The Court notes that in order for a

complaint to "state[] a plausible claim for relief" as required by case law, certain grade of specificity as to the alleged preemption is required. Iqbal, 556 U.S. 679. For instance, Plaintiffs specify the provisions in which the allegations for express preemption of Act 138-2020 and Act 142-2020 are premised. Plaintiffs further specify the relation between the federal statutes and state legislation in conflict, and the reason for said conflict. Also, Plaintiffs specify the economic and non-economic harm that would result in the event that Puerto Rico plans have to comply with the standards included in said Acts. Therefore, the Court finds that the standard set forth in Fed. R. Civ. P. 12(b)(6) is met. Hence, after a careful analysis of the arguments raised by the parties, the Court concludes that Plaintiff has presented sufficient facts to raise a plausible claim for relief. See Sepúlveda-Villarini, 628 F.3d at 29.

**C.    Cross-Motion for Summary Judgment under Fed. R. Civ. P. 56**

When opposing to Defendants' request for dismissal, Plaintiffs included a cross-motion for summary judgment and its corresponding statement of undisputed facts. See Docket Nos. 20 and 20-1. A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which entitles a party to judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party."  See Johnson v. Univ. of P.R., 714 F.3d 48, 52 (1st Cir. 2013); Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (citing Thompson v. Coca–Cola Co., 522 F.3d 168, 175 (1st Cir. 2008)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-250 (1986); Calero–Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

Plaintiffs claim that a cross-motion for summary judgment is timely and is proper at this early juncture. See Docket No. 31 at p. 9. The contention is premised in Fed. R. Civ. P. 56(b) which provides in its pertinent part that, "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Furthermore, Plaintiffs argue that a Local Rule 56(b) statement of undisputed facts was submitted in support thereof, "substantiated by admissible evidence." Id. at p. 5. As preemption is purely a legal matter, discovery is unnecessary. See id. Likewise, "the nature of a preemption claim as purely legal does not turn on the litigating positions of the parties; it turns, instead, on the character of the request for relief." Id. at p. 6.

The Court disagrees and briefly explains. Plaintiffs' motion for summary judgment is premature as there is complete absence of a factual record beyond the *Complaint* in which the Court can rely on to make its ruling. In fact, "Plaintiffs did not include specific references to pages or paragraphs supporting their assertions of fact, and even failed to make assertions of fact at all." Docket No. 37 at p. 5. Specifically, Local Rule 56(e) provides that "[a]n assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion." PRD Local Rule 56(e). In sum, Plaintiffs' proposed undisputed facts are simply statements of law recited in the *Complaint* rather than material facts as required by statute. Therefore, Plaintiffs' *Cross-Motion for Summary Judgment* is hereby **DENIED** without prejudice.

On a final note, considering Plaintiffs' arguments and the absence of a factual record in this case, the Court deems that the proper avenue to entertain Plaintiffs' request is through a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Rule 12(c) allows a party to move for judgment on the pleadings at any time "[a]fter the pleadings

are closed." Fed. R. Civ. P. 12(c). "While a motion to dismiss under Rule 12(b)(6) and a motion for judgment on the pleadings under Rule 12(c) are generally accorded the same treatment, a Rule 12(c) motion implicates all the pleadings, rather than the complaint alone." Medicaid & Medicare Advantage Prod. Ass'n of Puerto Rico, Inc., 2021 WL 792742 at *7. Simply put, seeking remedy under Rule 12(c) requires the pleading stage to conclude. Therefore, Plaintiffs may move for dismissal once the pleadings stage concludes.

### IV.      CONCLUSION

For the aforementioned reasons, the Court hereby **DENIES** the Defendant's *Motion to Dismiss* (Docket No. 16) and **DENIES** without prejudice Plaintiffs' *Cross-Motion for Summary Judgment* (Docket No. 20). Accordingly, the Defendants are to answer the complaint by April 15, 2022.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 25th day of March, 2022.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge